# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

In re

**JEFFREY STEVEN MALEK**,

Debtor.

Case No. **15-61179-13**

## MEMORANDUM OF DECISION

At Butte in said District this 10th day of April, 2018.

In this Chapter 13[1] case, Jeffrey Steven Malek ("Debtor") filed a Motion to Dismiss (the "Motion") (ECF No. 98). The Motion seeks relief pursuant to § 1307(b). According to the Motion, "Debtor believes he will be able to pay his creditors outside of the bankruptcy."

The Motion was opposed by U.S. Bank National Association as Trustee for CSFB Mortgage Backed Pass through Certificates, Series 2004-8 ("U.S. Bank") (ECF No. 102) and the Chapter 13 Trustee ("Trustee") (ECF No. 108). U.S. Bank and the Trustee argue that the Motion was filed in bad faith and that dismissal is not in the best interest of creditors. Further, the Trustee prays that the Motion be denied, or in the alternative that the case be converted to one under Chapter 7. A hearing was held on the Motion. At the hearing Debtor testified and Trustee's Exhibits ("Ex.") 1-7 were admitted, and subject to the submission of further evidence of valuation, the matter was taken under advisement. This Memorandum constitutes the Court's findings of fact and conclusions of law. Rule 7052, 9014.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

1

**Facts**

Debtor filed his petition on December 23, 2015 (ECF No. 32). Debtor's First Amended Chapter 13 Plan (the "Plan") was confirmed on April 16, 2016 (ECF No. 47). According to the terms of the Plan, Debtor agreed to make payments of $100.00 per month for 60 months, or until all of the provisions of the Plan have been completed (which would be less than 60 months). Along with these monthly payments, the Plan provided for the sale of 2 pieces of real property, the "O'Brien Creek Property" and the "Sanders County Property" (collectively, the O' Brien Creek Property and Sanders County Property are referred to as the "Properties") on or before December 22, 2017.[2] If Debtor failed to sell the O'Brien Creek Property prior to December 22, 2017, the Plan stated that Debtor would "surrender the property to secured creditors on December 23, 2017, or convert the case to Chapter 7." ECF No. 32.

The Plan contemplated a 20 month period for marketing and sale of the Properties, May 2016 through December 2017. In connection with confirmation, Debtor entered listing agreements that provided for the marketing and sale of the Properties beginning on April 4, 2016 through November 30, 2016. According to the agreements, the O'Brien Creek Property was listed for $499,000 (Ex. 4), and the Sanders County Property was listed for $299,000 (Ex. 5). The listing agreements expired in November 2016. Debtor did not enter new listing agreements until October and November 2017, almost a year after the initial agreements expired (Exs. 6 and

---

[2] The Plan represented that the O'Brien Creek Property had a value of $450,000.00. According to the Claims Register, as of the petition date, the balance owed to U.S. Bank was $337,517.49 (Claim No. 3) and First Security Bank's balance was $17,941.35 (Claim No. 5). Both claims are secured by the O'Brien Creek Property. The Plan is silent on the value of the Sanders County Property, but Schedule A, provides a current value of the property of $175,000.00. According to Debtor's Schedules, the Sanders County Property is not encumbered by any liens.

2

7).[3] Thus, for at least 10-12 months of the Plan's marketing period, the Properties were not listed for sale.

Along with entering the new listing agreements in the fall of 2017, Debtor also moved to modify his Plan simply stating that pursuant to 11 U.S.C. § 1329 and Mont. LBR 3015-3, "Debtor's Chapter 13 Plan is being modified to extend the time within which Debtor may sell his residential real estate to December 22, 2018." ECF No. 70. Within days of Debtor's Motion to Modify the Plan, the Trustee objected to Debtor's proposed modification (ECF No. 71) and independently proposed his own modification to the Plan. ECF No. 72. U.S. Bank objected to Debtor's proposed modification of the Plan, and it expressly supported the Trustee's proposed modification of the Plan.

The modifications proposed by the Debtor and Trustee were virtually identical, both requested additional time within which to sell the Properties, except under the Trustee's proposed modification, the Trustee would be responsible for marketing and selling the Properties, not the Debtor. Further, Debtor would remain obligated to make payments of $100.00 per month. As a result of continuances requested by Debtor and U.S. Bank, the Debtor and Trustee's competing motions to modify the Plan were heard on January 11, 2018.[4]

Shortly before the January 11, 2018, hearing, Debtor moved to dismiss his case. The Trustee filed a response to Debtor's Motion to Dismiss on January 10, 2018 objecting to it, and set the hearing for February 8, 2018, consistent with applicable local rules. U.S. Bank also

---

[3] Notably, the new listing prices were reduced as follows: the O'Brien Creek Property was reduced to $449,000.00; and, the Sanders County Property was reduced to $239,000.00.

[4] In order to prepare for the hearing, the Trustee filed a Motion for Turnover of Books and Records seeking to obtain copies of the listing agreements.

3

objected to the Motion, and further requested that if the Court grants the Motion that it impose a bar on the Debtor refiling bankruptcy for 180 days.

At the hearing on January 11, 2018, the Court was advised that Debtor had been detained by the State of Montana and was completing an alcohol treatment program. As of the January hearing, Debtor's release date was not known. Debtor's counsel explained Debtor's detention in the treatment program resulted in the Motion, and further stipulated to the Trustee's motion to modify, provided that no sale shall be completed pending the hearing on the Debtor's motion to dismiss. Consistent with that concession, the Court entered an Order approving the Trustee's motion to modify the plan, pending the hearing on the motion to dismiss.

At the February 8 hearing on the Motion, Debtor testified and explained the basis of his belief that "he will be able to pay his creditors outside of the bankruptcy." Although Debtor remains in the treatment program and is not employed, Debtor's plans for employment include the construction and marketing of new homes in July 2018, following his release. The construction of homes would require financing in the range of $150,000.00 to $175,000.00, and approval of plans. Assuming Debtor could obtain financing, he anticipates selling the completed homes beginning in September or October 2018. According to Debtor, if not successful with the construction and sale of the homes, he would surrender the O'Brien Creek Property to the creditors with liens on it on January 1, 2019.

At the conclusion of the hearing, the Court kept the evidentiary record open, and requested that the Trustee provide some indicia of the actual value of the Properties beyond those identified in the Schedules and listing agreements, and further provided Debtor with an opportunity to submit anything that rebutted any valuation provided by the Trustee. The Trustee complied. As of the petition date, the O'Brien Creek Property had a value of $455,000.00, and

claims secured by it totaled, $370,660.31. Although the Sanders County Property valuation has an effective date of February 20, 2018, it reflects a value of $115,000.00. It is not encumbered. Debtor did not submit anything related to valuation.

## Discussion

The relief requested in the Motion is predicated on § 1307(b), which provides:

> On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

11 U.S.C. § 1307(b). While the language of § 1307(b) is absolute (i.e., shall), a debtor's right to dismiss their case § 1307(b) is not. The right to dismiss under § 1307(b) is qualified by an implied exception for bad-faith conduct or abuse of the bankruptcy process. *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 767, 773–74 (9th Cir.2008); *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007). As a result, although there has not been a prior conversion, and Debtor has requested dismissal, the Court must consider whether this case has been tainted by bad faith, or the bankruptcy process has been abused.

The Trustee's response to the Motion argues that the Motion should be denied and alleges there is indicia of bad faith in this case, and further requests that the case be converted to a case under Chapter 7. Section 1307(c) delineates the basis upon which the Trustee may request conversion. It states:

> ... [O]n request of a party in interest, or the United States trustee and after notice and a hearing, the court may convert a case under [chapter 13] to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including....

11 U.S.C. § 1307(c). Cause under § 1307(c) includes bad faith. *In re Eisen*, 14 F.3d 469, 470 (9th Cir.1994). The determination of whether a debtor filed a petition or plan in bad faith so as

5

to justify dismissal for cause is left to the sound discretion of the bankruptcy court. *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1222–23 (9th Cir.1999). In determining whether a petition or plan is filed in good faith the court must review the "totality of the circumstances." *Id* at 1224–25.

When considering bad faith, the "totality of the circumstances" may include, but is not limited to: (1) whether the debtor misrepresented facts in his or her petition or plan, unfairly manipulated the Code, or otherwise filed his or her petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor intended to defeat state court litigation; and (4) whether egregious behavior is present. *Id*. The Leavitt assessment remains in use in this circuit. *In re Khan*, 523 B.R. 175, 185 (9th Cir. BAP 2014). The record shows that Debtor did not misrepresent facts in his petition or plan. Debtor has no history of filings and dismissals. Debtor did file this case to stop a pending foreclosure action, but that alone does not tip the scales towards a finding of bad faith. In this case, it is the last factor that tips the scales towards finding bad faith.[5]

Egregious is defined as "conspicuously bad."[6] This Court considers Debtor's failure to list the Properties for sale for 10-12 months of the approximate 18 month marketing period proposed in the Plan, conspicuously bad. When a plan is confirmed it becomes binding upon the debtor and the creditors. 11 U.S.C. § 1327. Confirmation is a two-way street. It binds debtors as well as creditors. Debtor was bound to list the Properties throughout the marketing period because selling the Properties was the lynchpin of the Plan. Debtor was aware of this obligation

---

[5] "The Leavitt factors are not conjunctive. The bankruptcy court is not required to find that each factor is satisfied or even to weigh each factor equally." *In re Khan*, 523 B.R. 175, 185 (9th Cir. BAP 2014).

[6] "Egregious." Merriam-Webster.com. 2018. https://www.merriam-webster.com (April 6, 2018).

6

as demonstrated by the initial listing agreement. Debtor wholly disregarded the Plan by failing to enter new listing agreements when the initial agreements expired, resulting in the Properties not being listed for the majority of the marketing period.[7] While there may be legitimate reasons why a property does not sell during the plan's marketing period and circumstances that support an extension of the marketing period rather than imposition of the plan's remedy, failing to have the property listed for a substantial portion of the marketing period is not one of those reasons. Debtor's conduct was made worse, first, by requesting an additional 12 months to market the property, and then, trying to dump the case via dismissal.

If Debtor had surrendered the property to secured creditors on December 23, 2017, or converted the case to Chapter 7 consistent with the Plan, his failure to have the Properties listed for sale would not have become an issue. However, instead of complying with his Plan, he requested an additional 12 months to sell the Properties even though he had failed to do so in the previous 18 months. If Debtor were permitted to dismiss his case now, after accomplishing nothing except delay over the course of his case, he would effectively convert his cure by sale plan to a "pay to delay" plan. The Court concludes that this conduct is sufficiently "egregious behavior" to constitute bad faith and denial of Debtor's request for dismissal under § 1307(b).

Having achieved nothing but delay through this bankruptcy, it is time to conclude this case. A Chapter 13 case concludes in one of three ways: discharge pursuant to § 1328, conversion to a Chapter 7 case pursuant to § 1307(c), or dismissal of a Chapter 13 case "for cause" under § 1307(c). *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1223 (9th Cir.1999). Of the forgoing options, only conversion to chapter 7 fulfills the Code's objectives and is in the best

---

[7] Debtors and their realtors must understand and appreciate that the marketing period in many cases will be a debtor's last opportunity to control the disposition of the property and capture any equity that might be available to fund a plan.

7

interest of creditors. If dismissed, all creditors would be forced to resort to their non-bankruptcy remedies while awaiting Debtor's release in July, and his speculative plans to construct houses. Debtor's belief that he will be capable of paying his creditors is premised on his release date, obtaining financing, approval of plans, and likely other unidentified variables. Alternatively, conversion to Chapter 7, and appointment of a Chapter 7 trustee will allow for the efficient administration of the estate.[8]

## Conclusion

In this case, Debtor confirmed a Chapter 13 cure by sale plan, but failed to appropriately market the property during the marketing period as required by the Plan. The Plan provided for the conversion of the case to Chapter 7 as one of the consequences for failing to sell the Properties within the marketing period. Despite the Trustee's intervening motion to modify the Plan, conversion to Chapter 7 is in the best interest of creditors for the reasons discussed above. Thus, the Debtor's Motion to Dismiss will be denied and this case will be converted to Chapter 7. A separate Order will be entered.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana

---

[8] At a minimum, the Trustee's valuations suggest that the Sanders County Property could be liquidated and funds used to pay claims, but ultimately the Chapter 7 trustee will have to make his/her own decisions regarding administration of the estate.